# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERI ESPINO,<br><br>        Plaintiff,<br><br>v.<br><br>DOLLAR TREE, INC.,<br><br>        Defendant. | Case No.: 18-CV-0406 W (MDD)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [DOC. 6]** |

  Pending before the Court is a motion to compel arbitration filed by Defendant Dollar Tree, Inc. [Doc. 6.] The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons that follow, the Court **GRANTS** Defendant's motion.

//
//
//
//
//
//
//
//

1

## I. BACKGROUND

In September of 2013, Plaintiff Keri Espino began employment with Dollar Tree in San Diego, California. (*McNail Decl*. [Doc. 6-4] ¶ 5.)

In 2014, while Espino was working as an Assistant Store Manager, Dollar Tree implemented a company-wide arbitration program. (*See McNail Decl*. [Doc. 6-4] ¶ 5; *Pearson Decl.* [Doc. 6-6] ¶ 5.) Employees hired on or after October 6, 2014 agreed to arbitration during their onboarding process as a condition of their employment. (*Pearson Decl.* [Doc. 6-6] ¶ 6.) Dollar Tree offered employees hired before then, like Espino, the choice as to whether to arbitrate employment-related disputes. (*Id.* [Doc. 6-6] ¶ 7.)

In April of 2015, Dollar Tree instructed each employee hired before October 6, 2014 to access the Dollar Tree arbitration website during his or her working hours using the store office computer. (*See Pearson Decl.* [Doc. 6-6] ¶ 10.) Each employee entered her name, the last four digits of her Social Security number, and her time clock ID number, store number, and work address. (*Id.* [Doc. 6-6] ¶ 12.) Once the employee submitted these credentials, a pop-up box appeared.

The pop-up box stated:

> **By clicking on the "Review Documents" button, you are acknowledging that Dollar Tree is giving you access to the Arbitration Agreement, Frequently Asked Questions about arbitration, instructions about how to opt out of (or decline to participate in) arbitration, and other important information about arbitration at Dollar Tree . . . .**
>
> **You may also print a copy of the Arbitration Agreement and other documents from this website. If you have any questions, please send an email to dtarbitration@dollartree.com.**

(*Pop-up Box* [Doc. 6-8, Exh. 14].) Upon clicking the "Review Documents" button, the website automatically generated an email to Dollar Tree. (*Pearson Decl.* [Doc. 6-6] ¶ 13.) The email to Dollar Tree provided the employee's name, the date the employee accessed the Arbitration Agreement, a copy of the agreement, and the employee's acknowledgement of receipt of the agreement. (*Id.*)

The website then directed the employee to a page that displayed an overview of the arbitration agreement and a simple procedure for opting out of it, displayed in several

short paragraphs. (*Pearson Decl.* [Doc. 6-6] ¶ 14; *Dollar Tree Arbitration Website* [Doc. 6-8, Exh. 15].) It included links to the arbitration agreement, together with FAQs, JAMS rules and procedures, a demand for arbitration form, and forms that could be used to opt out of arbitration. (*Id.*) The website included an email address to which employees could direct questions about the agreement. (*Id.*)

If an employee wanted to opt out, she needed only submit a simple form (either electronically or by mail) by May 31, 2015. (*Pearson Decl.* [Doc. 6-6] ¶¶ 14–15; *Dollar Tree Arbitration Website* [Doc. 6-8, Exh. 15].) If an employee submitted the opt-out form, the employee would receive written confirmation of her decision. (*Id.* [Doc. 6-6] ¶ 16.) The website conspicuously instructed employees, "[i]f you do not opt out by the deadline, you will be agreeing to arbitrate any employment-related disputes that arise." (*Pearson Decl.* [Doc. 6-6] ¶ 14 (quoting website); *Dollar Tree Arbitration Website* [Doc. 6-8, Exh. 15].)

Espino accessed the arbitration agreement website and read the arbitration agreement on April 10, 2015. (*Pearson Decl.* [Doc. 6-6] ¶ 17; *Espino Decl.* [Doc. 10-2] ¶ 5; *Espino Confirmation of Receipt* [Doc. 6-8, Exh. 17].) The company did not receive an opt-out form from Espino. (*Pearson Decl.* [Doc. 6-6] ¶ 18.)

Dollar Tree terminated Espino's employment in February of 2017. (*McNail Decl.* [Doc. 6-4] ¶ 5.) On December 22, 2017, Espino filed this action in California Superior Court. (*Eck Decl.* [Doc. 10-1] ¶ 4.) Dollar Tree removed the action on February 22, 2018. (*Notice of Removal* [Doc. 1].) On March 29, 2018, Dollar Tree filed this motion. (*Def.'s Mot.* [Doc. 6].)

//
//
//
//
//
//

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides:

> **A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.**

9 U.S.C. § 2. "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015).

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' " AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) (quoting Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

When ruling on a motion to compel arbitration, the court applies a standard similar to that found in Fed. R. Civ. P. 56. See Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004). " 'Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury.' " Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980)).

//
//
//
//
//

## III. DISCUSSION

Plaintiff contends that Dollar Tree's motion to compel arbitration should be denied because: (A) the agreement lacks mutual assent; (B) the agreement is unconscionable; and (C) Dollar Tree has waived the right to compel arbitration.

These contentions have no merit.

### A. Parties Mutually Assented to Arbitrate.

" '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " AT&T Technologies v. Communications Workers, 475 U.S. 643, 648 (1986) (quoting United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)). California contract law determines whether the parties agreed to arbitrate. See id.; Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012). Arbitration is "a voluntary means of resolving disputes, and this voluntariness has been its bedrock justification." Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal 4th 83, 115 (2000). "A contract to arbitrate will not be inferred absent a 'clear agreement.' " Davis v. Nordstrom, Inc., 755 F.3d 1089, 1092 (9th Cir. 2014) (quoting Avery v. Integrated Healthcare Holdings, Inc., 218 Cal. App. 4th 50, 59 (2013)). "In California, a 'clear agreement' to arbitrate may be either express or implied in fact." Id. at 1093 (quoting Pinnacle Museum Tower Ass'n, 55 Cal. 4th at 236).

"Where an employee continues in his or her employment after being given notice of . . . changed terms or conditions [of employment], he or she has accepted those new terms or conditions." Davis, 755 F.3d at 1093. This includes a binding contract to arbitrate disputes with the employer. See id.

Espino had notice that arbitration was being instituted as a term of her employment. According to her own declaration, she accessed Dollar Tree's arbitration website and read the arbitration agreement. She declares, "I checked a box on the computer screen and quickly read the agreement." (*Espino Decl.* [Doc. 10-2] ¶ 5.) She

5

read the arbitration agreement on April 10, 2015. (*Espino Decl.* [Doc. 10-2] ¶ 5; *Pearson Decl.* [Doc. 6-6] ¶ 17; *Espino Confirmation of Receipt* [Doc. 6-8, Exh. 17].) The deadline to opt out of arbitration was May 31, 2015. (*Pearson Decl.* [Doc. 6-6] ¶ 7.) She did not opt out. (*See id.* [Doc. 6-6] ¶ 18.) Instead, she chose to continue working for Dollar Tree with notice of the changed employment terms. (*See id.*; *McNail Decl.* [Doc. 6-4] ¶ 5.) See Davis, 755 F.3d at 1093.

Parties mutually assented to the arbitration agreement.

### B.     The Agreement Is Not Unconscionable.

" '[G]enerally applicable contract defenses, such as . . . unconscionability, may invalidate arbitration agreements without contravening' the FAA." Pinnacle Museum Tower Ass'n., 55 Cal. 4th at 246 (quoting Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996)); see also 9 U.S.C. § 2; Armendariz, 24 Cal. 4th at 114.

Unconscionability consists of both procedural and substantive elements. See Armendariz, 24 Cal. 4th at 114. The procedural element focuses on the circumstances of contract formation and negotiation, while the substantive element concerns the fairness of the agreement's terms. Id. Both procedural and substantive unconscionability must exist in order to render an agreement unenforceable. But both elements need not exist to the same degree. See id. California courts evaluate the elements on a sliding scale, such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id.

"The party resisting arbitration bears the burden of proving unconscionability." Pinnacle Museum Tower Ass'n., 55 Cal. 4th at 247.

#### 1.      Procedural Unconscionability

"Procedural unconscionability under California law concerns the manner in which the parties negotiated the contract and the respective circumstances of the parties at that

6

time[.]" Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 922 (9th Cir. 2013). There are two components of procedural unconscionability: surprise and oppression. "Surprise involves the extent to which the contract clearly discloses its terms, as well as the reasonable expectations of the weaker party." Id. "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation.' " Id. (quoting A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486 (1982)).

Plaintiff makes two arguments as to procedural unconscionability.

First, Espino argues that Dollar Tree required her "to endure a rigmarole of steps and obstacles" to review the agreement. (*Pl.'s Opp'n* [Doc. 10] 13:13–14:2.) On the contrary, Dollar Tree simply and conspicuously presented the relevant information in straightforward steps.

While viewing the computer in her employer's office, Espino encountered a pop-up box stating:

> **By clicking on the "Review Documents" button, you are acknowledging that Dollar Tree is giving you access to the Arbitration Agreement, Frequently Asked Questions about arbitration, instructions about how to opt out of (or decline to participate in) arbitration, and other important information about arbitration at Dollar Tree . . . .**
>
> **You may also print a copy of the Arbitration Agreement and other documents from this website. If you have any questions, please send an email to dtarbitration@dollartree.com.**

(*Pop-up Box* [Doc. 6-8, Exh. 14]; *Espino Decl.* [Doc. 10-2] ¶ 5.) The Dollar Tree arbitration homepage then clearly and simply explained the arbitration agreement and the opportunity to opt out of the arbitration program. (*Pop-up Box* [Doc. 6-8, Exh. 14].) It also provided clearly labeled links—FAQs, the JAMS rules and procedures, the opt-out forms, a "Contact Us" page, and the arbitration agreement itself. (*Id.*) Espino's reference to a "rigmarole of steps and obstacles" is not an accurate assessment.

Second, Espino argues that Dollar Tree "forced" her to read the arbitration agreement during a busy shift. (*Pl.'s Opp'n* [Doc. 10] 14:3–7 ("[T]he circumstances surrounding this ostensible agreement eviscerated Ms. Espino's bargaining power or

7

opportunity to negotiate.").) Espino overlooks that she had the option to print any of the materials and review them for over 55 days before making the decision about whether to opt out of arbitration. (*Dollar Tree Arbitration Website* [Doc. 6-8, Exh. 15] ("You may also print a copy of the Arbitration Agreement and other documents from this website. If you have any questions, please send an email to dtarbitration@dollartree.com."); *Espino Decl.* [Doc. 10-2] ¶ 5.)

Espino does not show the agreement to be procedurally unconscionable.

### 2. Substantive Unconscionability

Substantive unconscionability focuses on the terms of the agreement and evaluates whether they are overly harsh or one-sided and whether they lack mutuality. See Armendariz, 24 Cal. 4th at 114.

First, Espino argues that Dollar Tree's arbitration agreement requires her to pay unreasonable costs and creates a financial hardship. (*Pl.'s Opp'n* [Doc. 10] 15:3–15.) She represents that she would have to pay a $1,500 fee in order to arbitrate. (*Id.*) This is simply not the case. The relevant portion of the arbitration agreement provides:

> **Dollar Tree will be responsible for paying any filing fee and the fees and costs of the Arbitrator and the arbitration forum; provided, however, that if Associate is the Party initiating the claim, Associate will contribute the lesser of the filing fee required by JAMS or the filing fee to initiate a claim in the court of general jurisdiction in the state in which Associate is (or was last) employed by Dollar Tree, with Dollar Tree making up the difference.**

(*Arbitration Agreement* [Doc. 10-1, Exh. 1] 3.)

Second, Espino argues that Dollar Tree's arbitration agreement does not allow for adequate discovery. (*Pl.'s Opp'n* [Doc. 10] 15:16–16:3.) She represents that "JAMS Rule 17, which dictates discovery in this arbitration, allows for only voluntary exchange of information, witnesses, and documents, and does not permit formal requests for specific information." (*Id.* [Doc. 10] 15:16–20.) This is not correct. Even though the JAMS rules govern the arbitration, "[i]n the event of any conflict between the terms of [the arbitration agreement] and [the JAMS rules], [the arbitration agreement] shall

8

control." (*Arbitration Agreement* [Doc. 10-1, Exh. 1] 2 (at the bottom).) And the arbitration agreement provides:

> **Each party shall have the right to subpoena witnesses and documents to the extent allowable by law, subject to any limitations the Arbitrator shall impose for good cause shown.**

(*Arbitration Agreement* [Doc. 10-1] 3.) This provision contemplates a formal exchange of information.

Espino continues:

> **Furthermore, the JAMS' [sic] rules permit only one deposition, with a party having to request additional depositions. Given the multitude of issues in this matter, Ms. Espino will need to conduct multiple depositions and extensive discovery into specific issues. These discovery limitations would severely prejudice Ms. Espino and give Dollar Tree an unfair advantage to unilaterally withhold documents and information. Indeed, this is precisely why Dollar Tree forced its employees to "agree" to the arbitration contract.**

(*Pl.'s Opp'n* [Doc. 10] 15:20–16:3.) These contentions are unsupported by reasoning or citation. To the extent any discovery limitations to which Espino agreed to adhere in arbitration might now be unfavorable for her (which she does not demonstrate), such limitations would not render the agreement unenforceable on the "sliding scale" analysis in the absence of procedural unconscionability. Armendariz, 24 Cal. 4th at 114.

Espino does not show the agreement to be substantively unconscionable.

### C. Dollar Tree Has Not Waived the Right to Arbitrate

A party may waive the right to compel arbitration, either expressly or impliedly through conduct. Cal. Civ. Proc. Code § 1281.2. "State law, like the FAA, reflects a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims . . . . Although a court may deny a petition to compel arbitration on the ground of waiver . . ., waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." St. Agnes Med. Ctr. v. PacifiCare of California, 31 Cal. 4th 1187, 1195 (2003); see also Iskanian v. CLS Transp. Los Angeles,

LLC, 59 Cal. 4th 348, 375 (2014). While no single test dictates whether a party waived its right to compel arbitration, a court generally considers:

> **(1) whether the parties' actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.**

Sobremonte v. Superior Court, 61 Cal. App. 4th 980, 992 (1998); St. Agnes Med. Ctr., 31 Cal. 4th at 1196 (using the Sobremonte factors).

The California Supreme Court has emphasized the determinative factor of implied waiver as the presence or absence of prejudice from the litigation of the dispute. St. Agnes Med. Ctr., 31 Cal. 4th at 1203–04. Prejudice exists where the petitioning party's conduct has undermined arbitration's purposes of speedy and relatively inexpensive means of dispute resolution or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration. See id.

Propounding discovery prior to arbitration does not amount to prejudice if no information was produced that would have been unavailable in arbitration. See St. Agnes Med. Ctr., 31 Cal. 4th at 1204; Khalatian v. Prime Time Shuttle, Inc., 237 Cal. App. 4th 651, 662 (2015) (finding no prejudice where plaintiff provided no evidence of having produced information that would have been unavailable in arbitration).

Espino argues that Defendant prejudiced her by propounding written discovery in this forum and in state court. (*Pl.'s Opp'n* [Doc. 10] 16:8–17:18.) But as Defendant points out in reply, no party has yet responded to any discovery requests. Parties have stipulated to continue all deadlines on written discovery until after this motion is decided. (*Def.'s Reply* [Doc. 11] 10:9 n.5; *Murphy Decl.* [Doc. 11-2] ¶ 4.) Plaintiff's argument as to prejudice is meritless. See St. Agnes Med. Ctr., 31 Cal. 4th at 1204; Khalatian, 237 Cal. App. 4th at 662.

Dollar Tree has not waived its right to arbitrate.

IV. **CONCLUSION & ORDER**

Defendant's motion to compel arbitration is **GRANTED**.

**IT IS SO ORDERED.**

Dated: July 18, 2018

Hon. Thomas J. Whelan
United States District Judge